Entered: September 21st, 2022
Signed: September 20th, 2022



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at BALTIMORE

| | | |
|---|---|---|
| In re: | * | Case No. 22-11568-TJC |
| Juanita Loraine Bossler | * | Chapter 13 |
|     Debtor | * | |
| * * * * * * | * * * * * * | * |
| The Farmers Bank of Willards | * | |
|     Movant | * | |
| vs. | * | |
| Juanita Loraine Bossler | * | |
|     Respondent | * | |
| * * * * * * | * * * * * * | * |

## **MEMORANDUM OF DECISION**

When Debtor Juanita Bossler ("Debtor") filed her Chapter 13 petition she was in default for two reasons on her mortgage loan held by The Farmers Bank of Willards (the "Bank"). She was in arrears on five monthly payments and charges. In addition, the loan contained a provision that the death of a co-borrower was an event of default, and her co-borrower died prior to the bankruptcy filing. Debtor filed a Chapter 13 plan in which she cures the arrears but does not alter or modify the default-on-death provision. She, with the support of Brian A. Tucci, the Chapter 13 Trustee, seeks confirmation of the plan.

1

The Bank argues that, because the real property is the principal residence of Debtor, any modification of the default-on-death provision is improper under 11 U.S.C. §1322(b)(2),[1] although it does not object to a plan that requires Debtor to sell or refinance the property. The Court agrees with the Bank that a modification of the default-on-death provision is improper under §1322(b)(2) but will confirm the plan as presented.

## Statement of Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. §157(b)(2).

## Findings of Fact

The essential facts are not in dispute. The Bank made a loan to Debtor and a co-borrower, Virgie L. Small, on October 25, 2019, evidenced by their promissory note. The note is secured by a "purchase money mortgage" against Debtor's principal residence at 118 Clam Shell Road, Ocean City, Maryland. The amount of the loan as of the petition date was $141,129.56, of which $11,728.10 represented a pre-petition arrearage. Debtor states she has significant equity in the property, relying on an internet valuation service that shows a value of $364,000.00.

The note is payable on demand of the noteholder. Proof of Claim No. 1-2, p. 7. If no demand is made, the note is payable in 299 consecutive monthly installments, with the final payment being due on October 25, 2044. The note and mortgage provided that the death of either borrower was an event of default. *Id.* at pp. 7, 11. Debtor's co-borrower died on November 4, 2021.

---

[1] All statutory citations refer to 11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code" unless otherwise noted.

Debtor fell behind on her mortgage payments. After the Bank initiated foreclosure proceedings, Debtor filed for Chapter 13 relief on March 26, 2022.

Under Debtor's amended plan, Debtor proposes to maintain post-petition mortgage payments directly to the Bank and cure the pre-petition monetary default through plan payments over a 60-month period. The plan pays unsecured claims in full, other than student loans, which are not discharged. The plan does not change the loan's terms of payment, interest rate, maturity date, or other material obligations. It does not seek to cure or waive the default resulting from the co-borrower's death, including the note's "default on death" clause. ECF 18; *see also* ECF 34.

The Court held a confirmation hearing on June 7, 2022. The Bank argued that any modification of its rights under the default-on-death provision was impermissible under §1322(b)(2). The parties submitted post-hearing briefs on the issue, ECF 28, 32, 34, and a second hearing was held on August 16, 2022. At the hearings, the Court ruled the plan met all of the requirements for confirmation except for the issue raised by the Bank. This ruling follows.

**Conclusions of Law**

Debtor, with the support of the Chapter 13 Trustee, seeks confirmation of the plan. Debtor first contends the Bank's right to declare a default on the death of a co-borrower is not a right restricted by the antimodification provision under §1322(b)(2). Accordingly, she contends the default can be "cured" in the plan under §1322(b)(5). Alternatively, Debtor and the Chapter 13 Trustee contend the plan can be confirmed even if the default-on-death provision is a right that cannot be modified, because the plan does not cure or otherwise address the default-on-death provision. Instead, the plan allows Debtor to cure the monetary default and maintain post-petition payments during the plan term, and leaves the Bank with its rights under the provision at

3

the end of the plan. The Bank objects to any plan that attempts to "cure" the default-on-death provision but does not object to a plan in which Debtor sells or refinances the property.

Before turning to the legal discussion, the Court highlights one notable aspect of this loan. Although the loan purports to be a long-term mortgage, it is due on demand. If no demand is made, the loan is payable over twenty-five years. To some extent, the demand provision makes any cure and maintain plan of questionable utility. Leaving aside the default-on-death provision, if Debtor's plan cures the monetary default and maintains payments during the plan term, the Bank would nevertheless be left with the right to make demand upon completion of the plan. Thus, one of Debtor's objectives in the plan is to obtain sufficient time to sell or refinance the property even if she is unable to "cure" the default resulting from the death of the co-borrower. ECF 32 at p. 7.

The Court turns to the question of whether the default-on-death provision is a right that cannot be modified under the plan. Section 1322(b)(2) allows a Chapter 13 debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence[.]" §1322(b)(2). A plan, however, may "provide for the curing of any default" on a secured claim "on which the last payment is due after the date on which the final payment under the plan is due." §1322(b)(5).[2] On several occasions, the United States Court of Appeals for the Fourth Circuit has addressed the distinction between modifying a secured creditor's rights under §1322(b)(2) and curing a default under §1322(b)(5).

---

[2] The Bank does not contend §1322(b)(5) does not apply because of the demand provision in the note. Stated otherwise, the Bank does not contend the demand provision means "the last payment due [on the loan] is due [before] the date on which the final payment under the plan is due." *See* §1322(b)(5).

4

As the Fourth Circuit noted, the Supreme Court, in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993), "construed the meaning of the term 'rights' to encompass *all* interests of the mortgagee 'reflected in the relevant mortgage instruments' and enforceable under state law— including 'the right to repayment of the principal'—not just those rights that pertain to the *payment* of claims." *Hurlburt v. Black*, 925 F.3d 154, 162 (4th Cir. 2019) (emphasis in original). A modification is a "fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment terms of a note." *Litton v. Wachovia Bank, et al.*, 330 F.3d 636, 643 (4th Cir. 2003).

"[A] 'cure' merely reinstates a debt to its pre-default position, or it returns the debtor and creditor to their respective positions before the default." *Id.* at 643. The "core of a 'cure' lies in the maintenance of payments." *Anderson v. Hancock*, 820 F.3d 670, 674 (4th Cir. 2016) (quotations omitted). "Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Litton*, 330 F.3d 644 (quotations omitted). Thus, the "plain meaning of 'cure,' as used in §1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*." *Id.* at 872, *quoting In the Matter of Clark,* 738 F.2d 869, 871-72 (7th Cir. 1984).

Under these standards, the default-on-death provision is a right that cannot be modified under §1322(b)(2). The provision goes beyond merely maintaining payments and is a "fundamental aspect of the claim." *In re Litton*, 330 F.3d at 643. Further, the default is not capable of being cured as a matter of fact. And while §1322(b)(3) allows a plan to waive a default, the exception in §1322(b)(5) to the anti-modification provision of §1322(b)(2) speaks only to "curing" and not "waving" defaults.

5

The conclusion that the plan may not modify the default-on-death provision is not fatal to the confirmation of Debtor's plan.  Recognizing the hurdle to confirmation presented by an attempt to modify the default-on-death provision, Debtor, supported by the Chapter 13 Trustee, seeks confirmation of a plan that leaves the provision intact.  Under the plan, Debtor will cure the "objectively modest" prepetition arrears of $11,728.10, ECF 34 at p. 2, while maintaining post-petition payments.  Upon completion of the plan, the Bank will retain its rights under the default-on-death provision.

The Court found at the confirmation hearings that all elements for confirmation were met other than whatever effect the default-on-death provision had on confirmation.  The Bankruptcy Code does not require that all defaults must be cured to confirm a Chapter 13 plan.  Section 1322(a) sets forth the requirements for the contents of a plan.  Those requirements, which do not include curing all defaults, are met here.  Although §1322(b)(2) does not allow the plan "to modify the rights" of holders of claims secured only by a security interest in the debtor's principal residence, it expressly allows the plan to "leave unaffected" those rights.  §1322(b)(2).  Section 1322(b)(3) provides that a plan "may" cure or waive any default but does not make cure or waiver mandatory.  Section 1325(a)(5) establishes the treatment a secured creditor must receive under a plan, and Debtor's plan provides the necessary treatment.

The plan provides Debtor the opportunity to sell or refinance the property, make alternate arrangements with the Bank, or otherwise address the loan over the plan term.  It is true that upon completion of the plan, the Bank will have its rights under the default-on-death provision.  The parties, however, will be left in much the same position as if there were no such default provision.  The demand provision in the note, if enforceable, gives the Bank the right to call the loan even in the absence of the default due to the death of the co-borrower.

Finally, as the Supreme Court recognized in *Nobelman,* "[t]he lender's power to enforce its rights [that cannot be modified under §1322(b)(2)]—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic stay provision." *Nobelman*, 508 U.S. at 330 (citations omitted).  The plan is prepared on the Court's Local Bankruptcy Form M and provides that "[t]itle to the Debtor's property shall revest in the Debtor when the Debtor is granted a discharge pursuant to 11 U.S.C. §1328; or, if the Debtor cannot receive a discharge as provided in 11 U.S.C. §1328(f), upon the notice of Plan completion; or upon dismissal of the case." ECF 18, ¶8.  Under §362(c), the automatic stay applies to property of the estate until it is no longer property of the estate.  Thus, the automatic stay will continue to apply to the property post-confirmation until the Court orders otherwise or the property becomes vested in the Debtor under the terms of the plan.

## Conclusion

For the foregoing reason, the Court will confirm the plan, and will enter the Chapter 13 Trustee's standard confirmation order upon submission.

cc:   Debtor
      Debtor's Counsel
      Chapter 13 Trustee
      Creditor - The Farmers Bank of Willards
      Creditor's Counsel
      U.S. Trustee

**END OF MEMORANDUM**